Keith W. Heard (KH-8578)
Michael J. Walsh (MW-6578)
Burke & Parsons
100 Park Avenue
New York NY  10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RECEIVED
AUG 1 3 2007
U.S.D.C. S.D. N.Y.
CASHIERS

|  |  |
| --- | --- |
| **TAGANROGA SHIPPING CORPORATION,**<br><br>                              **Plaintiff,**<br><br>       **-against-**<br><br>**SEASPEED CARGO AND SEA TRANSPORT LLC (a/k/a SEASPEED DUBAI),**<br><br>                              **Defendant.** | **VERIFIED COMPLAINT** |

Plaintiff, TAGANROGA SHIPPING CORPORATION (hereinafter "Plaintiff"), by its attorneys Burke & Parsons, as and for its Verified Complaint against Defendant, SEASPEED CARGO AND SEA TRANSPORT LLC, a/k/a SEASPEED DUBAI (hereinafter "Defendant"), alleges upon information and belief as follows:

1.    This action involves claims for the breach of maritime contracts, which are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  This action also arises under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

### THE PARTIES

2.    At all times relevant hereto, Taganroga Shipping Corporation was and still is a foreign corporation organized and existing under and by virtue of the laws of Liberia with an office and place of business at 80 Broad Street, Monrovia, Liberia.

3.   At all times relevant hereto, Defendant Seaspeed Cargo and Sea Transport LLC (a/k/a Seaspeed Dubai), was and still is a foreign corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 205 Al Hawai Building, Al Rigga Road, Deira, P.O. Box 14437, Dubai, United Arab Emirates.

### THE CLAIM WITH RESPECT TO CHARTER DATED OCTOBER 2, 2003

4.   At all times relevant hereto, Plaintiff was and still is the owner of the vessel "M/V TAGANROGA" (hereinafter the "Vessel").

5.   Pursuant to a voyage charter party dated October 2, 2003 (the " First Charter"), Plaintiff, as owner, chartered the Vessel to Defendant or its nominee as Charterer. The First Charter was to carry a cargo of 4,400 metric tons, 1 / 2 grades, CPP, 5 Pct. MOLCHOPT, from one safe berth Jebel Ali to one safe berth and/or one SA Mombassa –Dar Es Salaam Range.  A copy of the Fixture Recap recording the main terms of the First Charter, including its incorporation by reference of the terms and conditions of the ASBATANKVOY form of charter party, is attached hereto as Exhibit A.  No formal written charter party was ever executed by the parties after the Fixture Recap.

6.   Pursuant to the First Charter, the Vessel carried the designated cargo to Tanga Road, Tanzania, where the cargo was discharged.

7.   The Fixture Recap for the First Charter required Charterer (i.e., Defendant) to pay demurrage for the use of the Vessel at the rate of $5,500 per day, or pro rata for part of a day.

8.   Pursuant to this clause of the Fixture Recap, Plaintiff issued its Debit Note to Defendant on December 9, 2003 in the gross amount of $14,227.43 for demurrage incurred with respect to the First Charter.

9.   Despite the contractual obligation described in the foregoing paragraph, a dispute has arisen between the parties due to Defendant's failure to make payment of the demurrage due and owing under the First Charter.

10.  With interest compounded quarterly from one month after the date of the invoice at U.S. dollar LIBOR rate plus 2%, the amount of Plaintiff's demurrage claim through August 9, 2007 on the First Charter is $17,576.49.

VERIFIED COMPLAINT

11.  Pursuant to the Fixture Recap, all disputes arising under the First Charter are to be submitted to arbitration in London and are to be governed by English law.

12.  Plaintiff has commenced arbitration against the Defendant in accordance with the terms of the First Charter.

### THE CLAIM WITH RESPECT TO CHARTER DATED APRIL 15, 2004

13.  Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 12 of this Verified Complaint with the same force and effect as if herein repeated and set forth at length.

14.  Pursuant to a voyage charter party dated April 15, 2004 (the "Second Charter"), Plaintiff, as Owner, chartered the Vessel to Defendant or its nominee as Charterer.  The Second Charter was to carry a cargo of a minimum of 4,800 metric tons from one safe berth Jebel Ali to one "SA" or safe anchorage Tanga, Tanzania.  A copy of the Fixture Recap recording the main terms of the Second Charter, including its incorporation by reference of the terms and conditions of the ASBATANKVOY form of charter party, is attached hereto as Exhibit B.  No formal written charter party was ever executed by the parties after the Fixture Recap.

15.  Pursuant to the Second Charter, the Vessel carried the designated cargo to Tanga Road, Tanzania, where the cargo was discharged.

16.  The Fixture Recap for the Second Charter required Charterer (i.e., Defendant) to pay demurrage for the use of the Vessel at the rate of $5,000.00 per day, or pro rata for part of a day.

17.  Pursuant to this clause of the Fixture Recap, Plaintiff issued its Debit Note to Defendant on July 7, 2004 in the gross amount of $48,715.28 for demurrage incurred with respect to the Second Charter.

18.  Despite the contractual obligation described in the foregoing paragraph, a dispute has arisen between the parties due to Defendant's failure to make payment of demurrage due and owing under the Second Charter.

19.  With interest compounded quarterly from one month after the date of the invoice at U.S. dollar LIBOR rate plus 2%, the amount of Plaintiff's demurrage claim through August 7, 2007 on the Second Charter is $58,971.73.

20.  Pursuant to the Fixture Recap , all disputes arising under the Second Charter are to be submitted to arbitration in London and are to be governed by English law.

21.  Plaintiff has commenced arbitration against the Defendant in accordance with the terms of the Second Charter.

## AMOUNT FOR WHICH ATTACHMENT SOUGHT

22.  In addition to an attachment in the full principal amount of the claims as outlined in Paragraphs 10 and 19 above, Plaintiff also seeks an attachment over an additional sum to cover estimated interest through date of the arbitration award as well as its anticipated attorneys' fees and costs, all of which are routinely recoverable under English law in London arbitration.

23.  Plaintiff estimates, as nearly as can be computed presently, these additional damages and costs for arbitrating its claims on the First and Second Charters to be $42,020.87, consisting of interest in the sum of $12,020.87 (computed on the total principal amount sought at a rate of U.S dollar LIBOR plus 2% for a period of two years – the estimated time frame within which arbitration is expected to be completed), and $30,000 in estimated U.K. counsel fees, costs, and arbitrators' fees, which will be incurred in conjunction with the London arbitration and which are recoverable there.

## THE TOTAL CLAIM WITH RESPECT TO BOTH CHARTERS

24.  Based upon the foregoing, therefore, the total sum sought to be attached with respect to the claims that arose under the First and Second Charter Parties dated October 2, 2003 and April 15, 2004, respectively is $118,569.09.

25.  For its part, Plaintiff has satisfied and performed all of its obligations to date under the terms of the First and Second Charters.

26.  Upon information and belief, and after investigation, Plaintiff has determined that the Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but upon information and belief Defendant has, or will have during the pendency of this action, assets within this District comprising, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire

and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendant (hereinafter "Assets"), moving through garnishee banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; HSBC Bank USA NA; JP Morgan Chase Bank; Standard Chartered Bank; and/or Wachovia Bank.

27.  The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia,* any assets of the Defendant held by or in the custody or temporary possession of the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant and to secure Plaintiff's claims as described above.

WHEREFORE, Plaintiff prays:

a.  That process in due form of law according to the usual practice of this Court may issue against Defendant citing it to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendant in the principal amount of the claim plus interest, costs and attorneys' fees;

b.  That since Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching and restraining all Assets of Defendant in an amount up to and including the sum of $118,569.09 including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant including, but not limited to such Assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of the aforesaid banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; HSBC Bank USA NA; JP Morgan Chase Bank; Standard

Chartered Bank; and/or Wachovia Bank and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served;

c.  That an Order be entered directing Defendant to proceed to London arbitration for the adjudication of the merits of the claims;

d.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the aforesaid London arbitration; and

e.  For such other and further or different relief as this Court may deem just and proper in the premises.

Dated:    New York, NY
          August 13, 2007

BURKE & PARSONS
Attorneys for Plaintiff
TAGANROGA SHIPPING CORPATION

By _____
    Keith W. Heard (KH-8578)
    100 Park Avenue
    New York NY  10017-5533
    (212) 354-3800

# VERIFICATION

STATE OF NEW YORK    )

COUNTY OF NEW YORK   )

Keith W. Heard, being duly sworn, deposes and says:

1.  I am a member of the bar of this Honorable Court and of the firm of Burke & Parsons, attorneys for the Plaintiff.

2.  I have read the foregoing Complaint and I believe the contents thereof are true.

3.  This Verification has been made by deponent and not by Plaintiff because Plaintiff is a foreign corporation, and has no officers or directors within this jurisdiction.

4.  The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

Keith W. Heard

Sworn to before me this
13ᵗʰ day of August, 2007

Notary Public

**WILLIAM F. DOUGHERTY**
Notary Public, State of New York
No.02DO6121747, Qual. in Rockland County
Certificate Filed in New York County
Commission Expires January 24, 2009

VERIFIED COMPLAINT

# Exhibit A

31003-168484
eceived 10/3/2003 10:31:05 AM - Patriks Markevics <markevic@lsc.riga.lv>
Page 1 of 2
ibject: Taganroga/Seaspeed
User: MARKEVIC

Pls see cln fixture.

Patriks

>>> Krisax <fixit@krisax.dk> 02-Oct-03 18:50:47 >>>

Ref: 031002-LB00015285
02-10-03 17:48:37

PATRIKS / LUIS

Re mt Taganroga.
----------------

We are pleased to confirm following clean fixture as per below terms
and details

Charter Party dated 2nd of october 2003

Charterer:     Seaspeed, Dubai or Nominee
Owner:         Taganroga Shipping Corp.
Name:          M/T Taganroga - OOS
Call Sign:     ELPH7
Flag:          Liberian
Built:         Finland, 1983
Class:         Russian Registre
IMO No.:       8129606
GRT:           5,154
NRT:           1,741
Summer Dwat: 6,297 on 7.20 Meters draft
Loa:           113.00 Meters
Beam:          18.30 Meters
Capacity:      6,165.00 CBM at 98 pct incl slop tanks (222 CBM slop)
               4 complete segregations
Coating:       11 zinc coated cargo tanks
Heating:       2,3,4 wings alubrass coiled (1800 CBM)
               2,3,4, center + 1 wings heat exchanger (4142 CBM)
IMO:           none IMO
SBT:           Yes

Tank layout at 98pct capacity:
1P: 480                  1S: 480
2P: 350    2CT: 1007     2S: 350
3P: 234    3CT: 1087     3S: 234
4P: 316    4CT: 1088     4S: 316

Total cargo tank: 5943
Slop tanks: 222
Total capacity: 6165

Last Cargoes:
1st Last - gasoil
2nd Last - lubes

For

-Cargo:        4,400 MTons, 1/2 grades, CPP, 5 Pct MOLCHOPT
-Lay/Can:      07-09 October 2003
-Load:         1 SB Jebel Ali
-Discharge:    1 SB and/or 1 SA Mombassa - Dar Es Salaam Range
-Freight:      USD 33.00 PMT Basis 1/1, or
               USD 31.00 PMT Basis 1/0
               In case of 1/1 maximum D/A at discharge port within
               Mombassa - Dar Es Salaam range for owners account USD
               7,000.00
-Freight payable wi 5 B/D in any case BBB

*Pārsruabs*
*3. 10. 03.*

(COPY
X1
(Rp)

53

```
-Laytime:      96 TTL Hrs FHINC/SHINC
-Demurrage:    USD 5,500.00 PDPR. Undisputed demurrage to be paid every
10
               days after completion of discharge and against receipt of
owners
               invoice, accompanied by laytime calculations, SOF, T/S,
NOR, LOPs.

Other Terms:
-Charter Party Form Asbatankvoy
-YA 94
-GA/Arbitration in London
-English law
-Charterers agents at load port (To be Seaspeed, Dubai) and at
discharge
 port
-Any taxes a/o dues on freight a/o cargo to be for charterers account
-Any taxes a/o dues a/o royalties calculated a/o levied on cargo
 a/o freight to be for charterers account
-Any dockage/wharfage/put/merchant marine/customs fees
 related to cargo/cargo handling fees or any other fee or charge
 related to cargo to be for charterers account.
-vessel to comply with ISM guide
-vessel to comply with ISGOTT guidelines
-tll 10 Pct Comm on f/d/d
-In absence of original B/L at discharge port, Owners to discharge
against
 Charters LOI, in Owners P&I Club wording, without bank guarantee.
-Fixture to be stirctly P&C
End Recap

Many thanks for cooperation which led into this clean fixture.

Regards
krisax
```

# Exhibit B

40415-212930
eceived 4.15.2004 15:10:58 - Patriks Markevics <markevic@lsc.riga.lv>
ubject: Taganroga - Account Seaspeed or Nominee

Page 1 of 2

User: MARKEVIC

>>> Krisax <fixit@krisax.dk> 15-Apr-04 14:17:13 >>>
Ref: 040415-NL00006714

Gd aftn,

Patriks / Niels

Ref telcon with Morten,

Pls note following received fm Chrtrs:

Please find below the revised recap of terms agreed today with all
subjects lifted:

C/P date:        15 April 2004

Charterer:    Seaspeed, Dubai or Nominee
Owner:        Taganroga Shipping Corp.
Name:         M/T Taganroga - OOS
Call sign:    elph7
Flag:         Liberian
Built:        Finland, 1983
Class:        Russian Registre
Imo no.:      8129606
GRT:          5,154
NRT:          1,741
Summer Dwat:6,297 on 7.20 Meters draft
Loa:          113.00 Meters
Beam:         18.30 Meters
Capacity:     6,165.00 CBM at 98 pct incl slop tanks (222 CBM slop)
              4 complete segregations
Coating:      11 zinc coated cargo tanks
Heating:      2,3,4 wings alubrass coiled (1800 CBM)
              2,3,4, center + 1 wings heat exchanger (4142 CBM)
IMO:          none IMO
SBT:          Yes

Tank layout at 98pct capacity:
1P: 480            1S: 480
2P: 350    2CT: 1007    2S: 350
3P: 234    3CT: 1087    3S: 234
4P: 316    4CT: 1088    4S: 316

Total cargo tank: 5943
Slop tanks: 222
Total capacity: 6165

Last Cargoes:
1st Last - Palm Oil/Base Oil
2nd Last - Base Oil
3rd Last - Base Oil

For

-Cargo:       Minimum 4,800 MTons, 2/3 grades WVNS, CPP,
              CHOPT up to full cargo (Intentions GO & Mogas)
-Lay/Can:     19-20 April 2004 with best efforts by Charterer to load
earlier
-Itinerary: At anchor Fujairah
-Load:        1 SB Jebel Ali
-Discharge: 1 SA Tanga
-Freight:     USD 29.75 PMT Basis 0/0 (All P/C for Charterer's account)
-Freight payable with in 5 banking days after completion of loading in
any case BBB
-Laytime:     100 TTL Hrs FHINC/SHINC

COPY
X 1

2p

51

-Demurrage: USD 5,000.00 PDPR. Undisputed demurrage to be paid every 10
days after completion of discharge and against receipt of owners
invoice, accompanied by laytime calculations, SOF, T/S, NOR, LOPs.

Other Terms:
-Charter Party Form Asbatankvoy
-YA 94
-GA/Arbitration in London
-English law
-Charterers agents at load and discharge
-Any taxes a/o dues on freight a/o cargo to be for charterers account
-Any taxes a/o dues a/o royalties calculated a/o levied on cargo
 a/o freight to be for charterers account
-Any dockage/wharfage/put/merchant marine/customs fees
 related to cargo/cargo handling fees or any other fee or charge
 related to cargo to be for charterers account.
-In case of board/board operations, charterer to arrange for suitable
fenders.
-No delays at discharge by owner as a result of negotiating previous
claims.
-Owners usual protecting clauses
-All other terms as per last Taganroga/Seaspeed C/P dated 2nd October
2003
-7.5 Pct total Commission on Freight/dead freight/demurrage including
2.5 Pct AddComm

End Recap

We trust the above is also in accordance with your
records/understanding. If not, please advise us ASAP.

Uqte

Thanks very much for this fixture.

Best regards
Niels Larsen
Krisax